### Chicago and E. I. R. R. Co. v. John I. Body, Adm'r.

1.  CONTRIBUTORY NEGLIGENCE—*Children of Tender Years.*—A child of tender years, unlike an older person, can not be expected to know and appreciate the danger of crossing a railroad so as to be guilty of such contributory negligence as to bar a recovery.

2.  NEGLIGENCE—*Obstructing Crossings.*—A railroad company is not guilty of negligence in partially obstructing a highway at a crossing for the length of time allowed by law and under the circumstances shown by the evidence in this case.

Action in Case.—Death from negligence.   Appeal from the Circuit Court of Iroquois County; the Hon. ROBERT W. HILSCHER, Judge, presiding.   Heard in this court at the May term, 1899.   Reversed and remanded.   Opinion filed October 12, 1899.

FREE P. MORRIS and FRANK L. HOOPER, attorneys for appellant; W. H. LYFORD, of counsel.

A. F. GOODYEAR, attorney for appellee; C. H. PAYSON, of counsel.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

This was an action on the case to recover damages for the death of plaintiff's intestate, Polly Edith Murphy, a

child between six and seven years old, who was run over by one of appellant's freight trains, and thereby killed, at Woodland, a small station on appellant's railroad in Iroquois county, on December 7, 1897. There was a trial by jury and verdict in the appellee's favor for $2,000, upon which the court entered judgment after overruling a motion for new trial. The defendant brings the case here by appeal.

The declaration contained four counts, but the plaintiff dismissed as to the first count before the case went to the jury. The second count charges negligence in failing to give the statutory signals. The third count alleges that the defendant negligently permitted the view of the railroad south of the crossing to be obstructed by cars standing on the tracks so that the deceased could not "see or hear" an engine approaching from the south until she (deceased) was within four feet of the track; that deceased and the engine reached the crossing at the same time and deceased was struck and killed.

In addition to the charges contained in the two counts mentioned, the fourth count charges that the train which struck and killed deceased was running at a high and dangerous rate of speed, to wit, twenty miles per hour. It is averred in all the counts that deceased was herself in the exercise of due care.

The facts of the case, as we gather them from the evidence, are, that at the time of the accident appellant was operating a double track railroad from Chicago, Illinois, to Terre Haute, Indiana, which ran southerly through Woodland, a small unincorporated village and railroad station. Trains going north on this road used the east track, and those going south used the west track. These main tracks were between eight and nine feet apart. Within a radius of two miles north and south, and one mile east and west, the entire population of the settlement, including the village, was 310 persons. Through the village the tracks ran due north and south, but about three-quarters of a mile south of the station the tracks curve to the east. Fifty feet north of the station there is an east and west highway, generally

called " Main street." The platform of the station, having two steps at the north end, extended to the south line of the highway or Main street. This platform was about 200 feet long and extended some distance south of the station building, which was about forty feet long. About twenty feet south of the station building, west of the platform, there was a small coal-house, about ten feet square and one story high. Immediately west of the coal-house there was a water-closet, and about 200 feet south of the station and upon the same side of the tracks, was a small section-house, and beyond this there appears to have been nothing to obstruct a full view of the tracks as far south as they could be seen. There was a school-house about 500 feet east of the tracks and on the north side of the highway known as Main street. A further description of the premises and sur- roundings is unnecessary to a fair understanding of the case.

Appellee's intestate lived with her parents about two miles west of Woodland. She belonged in that school dis- trict and attended school in Woodland, at the school-house above mentioned, west of the tracks and north of the highway.

At the noon hour, on the 7th day of December, 1897, deceased, in company with eight or nine of her schoolmates, most of whom were older than herself, was looking at Christmas toys in the window in front of Goodyear's store. This was about 100 feet west of the center of appellant's right of way. A regular local freight on appellant's road had just pulled in from the north, and most of the children had noticed its approach. This train was generally late and frequently came into Woodland about noon. It was just stopping, with the caboose or way-car about half way over the track, in the center of Main street, when the five- minute school bell rang. The children at the window, including deceased, at once started for the school-house, which was about 600 feet east of Goodyear's corner and across the railroad track. In going from Goodyear's corner to the railroad some of the children went on the planking which composes the walk across the north and south street,

just west of the right of way, while others walked in the street at the side of it.  When they reached appellant's tracks they found the sidewalk on the south side of Main street obstructed by the caboose of the local train and there the children stopped.  At this time there was approaching the crossing from the south on appellant's east track, a freight train of forty-two cars.  The evidence seems to show that this train was what is known as a " wild train," not running on any schedule time.  There is a sharp conflict in the evidence as to the rate of speed at which this north-bound train was running at the time of the accident, and as to whether or not the bell was rung or the whistle sounded for the station or crossing.  After the caboose of the south-bound train had partially cleared the crossing at Main street, so there was room for them to do so, the children started to run across to the school-house.  Persons who had seen the approach of the north-bound train shouted for them to stop, but, continuing to run, three of the girls and a boy, who were ahead of deceased, got across the tracks safely; the others attempted to follow, but a witness, Mr. Meyer, put out his arms in front of them and tried to stop them. In this he succeeded as to all except deceased, who dodged around him to the north and, apparently with no thought except a desire not to be late for school, ran as rapidly as she could in a northeasterly direction to the north-bound track.  Mr. Meyer tried to catch her, but she ran upon the track, was struck by the north-bound train and killed.

The evidence shows that deceased was a bright, intelligent girl, and no doubt she knew and understood the dangers incident to crossing the railroad, as well as one of her tender age and experience could be expected to know and appreciate them.  Had she been of mature age there is no question, under the evidence, that she would have been guilty of such contributory negligence for her own safety as to bar her recovery, but we are not prepared to hold a child of such tender years was bound to the same extent as an older person.  We need not discuss the different decisions as to how far a child of the age of deceased is to be held

responsible for the exercise of due care.  Were that the only question in the case we would not reverse alone on the ground of want of care of deceased.  But the question remains whether or not appellant was responsible for the death, for however sad and unfortunate the occurrence, appellant is not to held liable for it unless it was occasioned by its fault or negligence.  We have examined the evidence with great care, and we are of the opinion that, giving to the negative testimony such weight as its character entitled it to, appellant was not shown by a preponderance of the evidence to have failed in its duty to give the proper statutory signals, and in that-respect the charges of the declaration were not sustained.  We also think the evidence fails to show that the train which killed deceased was running at a high and dangerous rate of speed.  The evidence on this point was conflicting, but, taken as a whole, we do not think it warranted the jury in finding against appellant on that proposition.  A fact worthy of note in this connection is, that the child was killed where she was struck, and was not thrown from the track with any considerable force or momentum, such as would almost inevitably have been the case had the train been running at a high rate of speed.

Nor do we see that the charge of negligence in obstructing the view of the track is sustained by the evidence.  We must take a reasonable view of the necessities of railroad operations.  To discharge freight and passengers, trains must stop at station platforms, and by the statute, street crossings may be obstructed in the necessary discharge of business for a space of time not exceeding ten minutes. (Rev. Stat., Chap. 114, Sec. 14.)  This length of time had not elapsed when the accident occurred, and we are of opinion appellant was not guilty of negligence in partially obstructing the highway for the length of time and under the circumstances shown by the evidence.  The other alleged obstructions to the view of the track were only such as appear to be usual and necessary about a railway station, and we can not see that it was negligence on the part of appellant to have been there.

Our conclusion is that the charges of negligence contained in the declaration are not proven by a preponderance of the evidence, and that the verdict was not warranted by the proof. We find no error in the instructions, but for the reasons given, the judgment must be reversed and the cause remanded for a new trial. Judgment reversed and cause remanded.